101 F.3d 1392
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Latonya Nicole COX, Defendant,
Dale Orville Wathey, Defendant-Appellant.
 No. 95-1639.
 United States Court of Appeals,
Second Circuit.
 July 2, 1996.
 
 Irving Cohen, New York City, for Appellant.
 Michelle L. Adelman, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.
 Present: MINER, JACOBS, PARKER, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 3
 This cause came to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant Dale Orville Wathey appeals from a judgment entered in the United States District Court for the Eastern District of New York (Seybert, J.) convicting him, following a jury trial, of conspiracy to import and distribute cocaine, in violation of 21 U.S.C. §§ 952(a) and 963, importation of cocaine, in violation of 21 U.S.C. § 952(a) and possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Wathey was sentenced to a 90-month term of imprisonment, a four-year term of supervised release, and a $150 special assessment.
 
 
 5
 On May 28, 1994, United States Customs Inspector Michael Fernandez selected Latonya Cox, who had arrived on a flight at John F. Kennedy International Airport, for a routine inspection. Cox showed Fernandez a Massachusetts identification card and her airline tickets, and told Fernandez that she had arrived from Saint Vincent. Customs agents discovered that Cox was carrying packages containing approximately two kilograms of cocaine on her body.
 
 
 6
 While the agents were searching Cox, Wathey approached Fernandez and inquired about a connecting flight to Massachusetts. Fernandez examined Wathey's tickets and noticed that Wathey had the same travel itinerary as Cox. Fernandez returned to the room where Cox was being held. Cox told Fernandez that she was travelling with a man by the name of "Dale" and provided a description of the man that matched that of Wathey. Cox also told the agents that the cocaine belonged to Wathey. Fernandez observed that airline tickets for both Cox and Wathey had been purchased with cash on the same day and from the same travel agency.
 
 
 7
 After arresting Wathey, Fernandez found medical tape and "shrink wrap" in Wathey's luggage. These items matched the tape and wrap found on the packages of cocaine carried by Cox. As Fernandez removed the tape from the luggage, Wathey exclaimed, "Everybody's got to make a living."
 
 
 8
 At Wathey's trial, Cox testified that Wathey was a friend and recently had asked her if she knew of "a friend [who] would make a trip for him." Cox understood that "[m]aking a trip means someone to go and bring drugs back for you." Soon thereafter, Cox agreed to "make a trip" with Wathey. On May 25, 1994, she and Wathey flew from Boston to Saint Vincent and checked into a hotel in Saint Vincent. On the morning of May 28, 1994, Cox noticed square white packages, shrink wrap, and white tape in the closet of the hotel room. Wathey told Cox that the packages contained marijuana. Wathey placed the packages around Cox's body, and they both left for the airport.
 
 
 9
 Prior to trial, the government moved to limit Wathey's cross-examination of Cox on certain matters relating to information obtained from Cox's diary. Cox's diary revealed that she regularly had visited a probation officer, and that she had been having intimate relationships with four men, some of whom were facing criminal charges. After determining that Cox was on probation for a juvenile assault charge, the district court ruled that Wathey could ask Cox only whether she was on probation and whether she was required to report any arrests as a condition of her probation.
 
 
 10
 Defense counsel requested permission to cross-examine Cox about her intimate relationships with the men, arguing that this testimony could show that one of the men referred to in the diary was involved in the smuggling scheme. The district court ruled that defense counsel could ask Cox "whether she's previously known individuals who distributed drugs to her and what that relationship was."
 
 
 11
 On appeal, Wathey contends that the district court improperly limited his cross-examination of Cox. We disagree. "[T]he scope and extent of cross-examination are generally within the sound discretion of the trial court." United States v. Pedroza, 750 F.2d 187, 195 (2d Cir.1984). "Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir.1990) (quotations omitted), cert. denied, 499 U.S. 940 (1991).
 
 
 12
 Wathey first contends that the district court erred by precluding cross-examination of Cox on "the circumstances of [her] arrest, the way she handled her probation sentence, and specifically how she dealt with the smuggling arrest while on probation." According to Wathey, this line of questioning could have been used to attack Cox's credibility by showing that she had violated the terms of her probation and had failed to report her May 28, 1994 arrest to her probation officer. We find this contention to be without merit.
 
 
 13
 The district court properly ruled that the circumstances of Cox's assault charge were inadmissible because there was no evidence showing that Cox actually had been convicted. The district court allowed defense counsel to ask Cox whether she was on probation and whether, as a condition of her probation, she was required to report any additional arrests. This ruling enabled Wathey to establish exactly what he had sought to establish. Indeed, defense counsel elicited from Cox that she was on probation, that as a condition of probation she was not to commit additional crimes, that she was required to report any additional arrests to her probation officer, and that she had not reported her May 28th arrest to her probation officer.
 
 
 14
 Wathey next argues that the district court improperly curtailed cross-examination relating to Cox's relationship with men as depicted in her diary. We disagree.
 
 
 15
 Even though the diary did not contain any specific evidence that any other man had assisted Cox with the smuggling of the cocaine, the district court allowed Wathey to pursue this line of questioning. The court ruled that defense counsel could question Cox as to "whether she's previously known individuals who distributed drugs to her and what that relationship was." This ruling allowed Wathey to pursue his theory that one of these men was somehow involved in the smuggling scheme. Accordingly, this argument is without merit.